## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SCOTT BOEHM; and DAVID STLUKA, <br><br> *Plaintiffs*, <br><br> v. <br><br> GETTY IMAGES (US), INC.; and JOHN GEORGE, <br><br> *Defendants*. | Civil Case No. <br><br> ECF Case <br> Electronically Filed <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs Scott Boehm and David Stluka ("Plaintiffs"), by and through undersigned counsel, pursuant to Rules 8 and 23 of the Federal Rules of Civil Procedure, hereby demand a trial by jury of all claims and issues so triable, and for their Complaint against Defendants Getty Images (US), Inc. ("Getty Images"), and John George ("George") (collectively "Defendants"), hereby assert and allege as follows:

### THE PARTIES

1.      Plaintiff Scott Boehm ("Boehm") is a photographer who makes his living taking and licensing sports-related photographs.  Plaintiff Boehm is a resident of the state of Illinois.

2.      Plaintiff David Stluka ("Stluka") is a photographer who makes his living taking and licensing sports-related photographs.  Plaintiff Stluka is a resident of the state of Wisconsin.

3.      Upon information and belief, Getty Images is a New York corporation with offices located throughout the country, including in Seattle, Washington; New York, New York; and Los Angeles, California.

4.      Upon information and belief, Getty Images is one of the world's largest aggregators and licensors of "stock" photography, including sports-related photo collections.

5.   Getty Images operates a fully interactive website, located at www.gettyimages.com, through which customers can purchase licenses to use photos and then download copies of photos, including formerly Plaintiffs' photos at issue in this action.

6.   Upon information and belief, Defendant George was, at all times relevant to the claims in this action, an Account Manager in the Sports department for Getty Images.

## JURISDICTION AND VENUE

7.   Jurisdiction for Plaintiffs' claims lies with the United States District Court for the Western District of Wisconsin pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*, 28 U.S.C. § 1331 (conferring jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States"), 28 U.S.C. § 1338(a) (conferring original jurisdiction over claims arising under any act of Congress relating to copyrights), 28 U.S.C. § 1367 (because Plaintiffs' claims arise from the same controversy as the copyright infringement claims being asserted herein), and the Declaratory Judgment Act of 1934, 28 U.S.C. §§ 2201, *et seq.*

8.   Venue is proper in this Court under 28 U.S.C. § 1391(b) since the misconduct by Getty Images giving rise to the claims asserted herein occurred in this District and/or involved parties located in this District; and 28 U.S.C. § 1400(b) since Defendants did business in this District, may be found in this District, and infringed Plaintiffs' copyrights in this District.

## FACTUAL ALLEGATIONS

### *General Allegations*

9.   Plaintiffs are professional photographers who make their living by taking and licensing photographs.

10.   Plaintiffs specialize in creating sports-related photography, including photographing NFL, NCAA, and MLB games.

2

11.     Plaintiffs own vast collections of photos created during games and events involving Wisconsin sports teams, including the University of Wisconsin Badgers, Milwaukee Brewers, and Green Bay Packers.

12.     All of the photographs at issue in this action were created by Plaintiffs and they own all copyrights in and to the photographs.

13.     Plaintiffs' copyrights in and to the photographs that are the subject of this action have been registered with the United States Copyright Office.

14.     Plaintiffs previously made their works available for sale and licensing through Getty Images.

15.     Plaintiffs' relationship with Getty Images was governed by a contractual agreement (referred to herein as the "Contributor Agreements") in which Plaintiffs authorized Getty Images, according to specified conditions and limitations, to sell licenses to their works to customers in exchange for Getty Images' paying a specified percentage of the license fees to Plaintiffs.

16.     A copy of Plaintiff Boehm's contributor agreement with Getty Images is attached hereto as Exhibit 2.

17.     A copy of Plaintiff Stluka's contributor agreement with Getty Images is attached hereto as Exhibit 3.

18.     Plaintiff Stluka's contractual and licensing relationship with Getty Images terminated in 2009.

19.     Plaintiff Boehm's contractual and licensing relationship with Getty Images terminated in 2012.

20.     Upon information and belief, Getty Images has sold numerous licenses to businesses located in and residents of the State of Wisconsin and regularly does business in the State of Wisconsin.

21.     Upon information and belief, Defendant George acted on behalf of and represented Getty Images in numerous licensing transactions with businesses located in and residents of the State of Wisconsin.

22.     Defendants provided copies of Plaintiffs' photos to persons and businesses located in and residents of the state of Wisconsin under various forms of licenses, including limited use licenses that specified the usage rights granted to the licensor and so-called "comp" (composition) licenses that permitted the licensor to use the images for internal layout or placement purposes only.

23.     *Inter alia*, Defendants provided copies of Plaintiffs' photographs to certain defendants in Plaintiffs' prior lawsuit in this District captioned *Boehm, et al. v. Zimprich, et al.*, No. 14-cv-0016 (JDP) (W.D. Wis.) (hereinafter referred to as "the *Zimprich* case").   In particular, Defendants supplied high-resolution digital copies of Plaintiffs' photos to Dan and Ciara Zimprich (d/b/a On 2 the Field) (hereinafter "the Zimprichs"), and Legends of the Field, LLC (hereinafter "LOTF").

24.     Defendants also provided copies of Plaintiffs' photographs to certain defendants in Plaintiffs' pending lawsuit in this District captioned *Boehm, et al. v. Scheels All Sports, Inc.*, et al., No. 15-cv-0379 (JDP) (W.D. Wis.) (hereinafter referred to as "the *Scheels* case").   In particular, Defendants supplied high-resolution digital copies of Plaintiffs' photos to Jesse Winiecki.

4

25.     Plaintiffs previously asserted claims of, *inter alia*, direct, contributory and/or vicarious copyright infringement against Defendants Getty Images and George in the *Scheels* case.

26.     Because information regarding the full scope of the use of Plaintiffs' photos by the defendants in the *Zimprich* and *Scheels* case remains in the sole possession of each defendant, the full scope of Getty Images' infringing activities has not yet been ascertained.

27.     Because information regarding the full scope of Getty Images' infringements remains in the sole possession of Getty, Plaintiffs assert copyright infringement claims for all photos identified in Exhibit 1 that are the subject of this action.

28.     Upon information and belief, Getty Images provided high-resolution digital copies of hundreds, if not thousands, of photographs to the Zimprichs, LOTF, Winiecki, and other sports memorabilia dealers in Wisconsin under "comp" or "newspaper" licenses, including the hundreds of images owned by Plaintiffs identified in Exhibit 1.

29.     As alleged in Plaintiffs' pleadings in the *Scheels* and *Zimprich* cases, all of which are expressly incorporated herein by reference, dozens of sports memorabilia dealers in Wisconsin and Illinois have used hundreds of Plaintiffs' photographs – and hundreds of additional photographs owned by other parties – to create unofficial, unsanctioned, infringing, and counterfeit products that they display and sell in their stores, including canvases, prints, posters, framed pictures, and other memorabilia items.

30.     Upon information and belief, the acts, conduct, and omissions of Getty Images and George caused, enabled, facilitated, and otherwise materially contributed to a massive counterfeiting scheme in Wisconsin and Illinois that infringed Plaintiffs' copyrights in the photos

being reproduced without permission, including all infringements at issue in the *Zimprich* and *Scheels* cases.

### The *Zimprich* Case

31.     In November and December 2012, Getty Images disclosed information regarding the potentially unlicensed or otherwise unauthorized uses of Plaintiffs' photographs by sports memorabilia dealers located in Wisconsin, including LOTF and the Zimprichs.

32.     According to Getty Images, the Zimprichs purchased nineteen (19) "Editorial-newspaper" licenses that permitted use of Plaintiffs' photos in limited circulation newspapers only and the usage rights were limited to "1 day" or "1 month" only.

33.     According to Getty Images, LOTF had admitted to Getty Images that it used twenty-five (25) photographs "without a license" and that only four (4) of Plaintiffs' photos were involved.

34.     During this same time, Plaintiffs demanded that Getty Images provide a report of any "open" licenses (*i.e.*, licenses whose terms had not yet expired at the time Plaintiffs' relationship with Getty Images terminated) as required under their Contributor Agreements, and that Getty Images disclose any so-called "composite" licenses  (*i.e.*, licenses that Getty Images grants on a free/complimentary basis to potential customers who are permitted to use the photographs only for internal "mock-up" or "layout" purposes).[1]

35.     Under Section 5.2 of the Standard Terms and Conditions of Plaintiffs' now-terminated Contributor Agreements, Getty Images was required to report to Plaintiffs any licenses involving Plaintiffs' works and the royalties due to Plaintiffs, if any.  This requirement applies to all licenses, including "comp" licenses.

---

[1] References herein to any "licenses" issued by Getty Images is for convenience and do not reflect or indicate a concession by Plaintiffs that a particular alleged license is valid.

36.     Under Section 10.2 of their contributor agreements, Getty Images was required to report to Plaintiffs any licenses that had open terms at the time Plaintiffs' relationship with Getty Images terminated.

37.     Plaintiffs, through counsel, repeatedly have requested information regarding all "comp" licenses that Getty Images issued to its customers that were not previously reported to Plaintiffs.

38.     Plaintiffs reiterated their demand for information regarding "comp" licenses— including the names of the entities that obtained such alleged licenses—to Getty Images, through counsel, on May 9, 2016.   Despite the fact that Getty Images is aware of widespread infringements by the parties to which it granted such licenses, Getty Images refused to provide any information to Plaintiffs regarding these licenses or the entities to which it provided high-resolution copies of Plaintiffs' photos (for no compensation).

39.     Despite these contractual obligations, Getty Images refused to cooperate with Plaintiffs' demand/request for this information on the grounds that Plaintiffs are not entitled to that information.

40.     Because Getty Images refused Plaintiffs' repeated demands for "open" and "comp" license reports, Plaintiffs were not (and could not possibly have been) aware of the true number of photographs that Defendants actually had provided to LOTF and the Zimprichs. Getty Images does not make this information public, did not report license terms on the periodic royalty statements it issued to Plaintiffs, did not report any "comp" licenses on Plaintiffs' royalty statements or disclose them in any other way, and refused Plaintiffs' repeated demands for access to this information.

41.     Relying on the information provided by counsel for Getty Images, Plaintiffs filed suit against the Zimprichs and LOTF, along with other defendants, alleging infringement of Plaintiffs' copyrights in the photographs identified by Getty Images' disclosures.

42.     On or about April 17, 2014, during discovery in the *Zimprich* case, Plaintiffs served a third-party subpoena on Getty Images seeking, among other things, records identifying all of Plaintiffs' photographs that Getty Images had provided or licensed to LOTF and the Zimprichs.

43.     Getty Images responded to Plaintiffs' subpoena on or about April 29, 2014 and subsequently produced documents responsive to the subpoena.

44.     Getty Images' initial document production included a spreadsheet purporting to identify all licenses issued to LOTF and the Zimprichs.

45.     Specifically, the report produced by Getty Images identified eleven (11) "comp" licenses that it granted to LOTF and twenty (20) "Editorial-Newspaper" licenses that it granted to Dan or Ciara Zimprich for use by On 2 the Field.

46.     Getty Images made no effort to explain the discrepancy between the information provided in November-December 2012 and the information provided in 2014 in response to Plaintiffs' subpoena.

47.     After subsequent discovery from LOTF and the Zimprichs suggested that these entities actually had access to many more photographs than Getty Images had disclosed, Plaintiffs demanded additional information from Getty Images.

48.     On or about December 8, 2014, Getty Images finally disclosed for the first time that it actually had provided LOTF with high-resolution digital copies of <u>285</u> of Plaintiffs'

photographs under "comp" licenses.  All 285 photographs are included in Exhibit 1 and are at issue in this action.

49.     Again, Getty Images made no effort to explain the even more serious discrepancy between the information provided in November-December 2012 and the information provided in December 2014 in response to Plaintiffs' subpoena.

50.     Prior to December 8, 2014, Getty Images did not disclose that it had provided copies of these additional photographs to LOTF.

51.     Prior to December 8, 2014, Getty Images had disclosed and represented that it had granted only eleven (11) "comp" licenses to LOTF.

52.     On or about December 17, 2014, this Court issued an order granting partial summary judgment to Plaintiffs in the *Zimprich* case in which the Court found the Zimprichs liable for willful copyright infringement.

53.     Upon information and belief, Getty Images provided to LOTF and the Zimprichs hundreds of additional photographs owned by Getty Images' contributors who are similarly situated to Plaintiffs in all relevant respects.

54.     Upon information and belief, many of the defendants in the *Scheels* and *Zimprich* action continue to copy, publish, display, and offer for sale counterfeit products that involve photographs obtained from Getty Images, primarily photos obtained by LOTF, the Zimprichs, and Winiecki.

### *Widespread Counterfeiting in the Wisconsin Sports Memorabilia Market*

55.     Upon information and belief, the acts, conduct, and omissions of Getty Images and George caused, enabled, facilitated, and otherwise materially contributed to a massive counterfeiting scheme in Wisconsin and Illinois that infringed Plaintiffs' copyrights in the photos

being reproduced without permission, including all infringements at issue in the *Zimprich* and *Scheels* cases.

56.      The scale of this counterfeiting conspiracy is staggering.

57.      For example, an inspection of the Zimprichs' production facility during the *Zimprich* case revealed that they operate a large-scale printing operation, including a high-resolution photo printing operation in their store in the East Towne Mall and a canvas printing and mounting operation run out of a warehouse in the Madison, WI area.

58.      Attached hereto as Exhibit 4 are true and correct copies of photographs of the Zimprichs' photo printing and canvas production operation taken during a discovery inspection in the *Zimprich* case.

59.      Despite never having purchased a legitimate commercial license from Getty Images, the Zimprichs were able to obtain so many digital copies of photographs that they offered a "proof book" from which customers could select sports photographs for custom prints, canvases, and other orders.  The photographs offered for copying and sale included stadiums, games, and other events involving the Packers, Badgers, Brewers, Bucks, Bulls, Blackhawks, and other teams.  The photographs also include some of Wisconsin's most famous athletes, including Brett Favre, Aaron Rodgers, Clay Matthews, Ryan Braun, and others.

60.      Attached hereto as Exhibit 5 are true and correct copies of photographs of a sampling of pages from the Zimprichs' "proof book" taken during a discovery inspection in the *Zimprich* case.

61.      Many of the defendants in the *Scheels* case contend/admitted that they obtained the canvases and other products that include unlicensed copies of Plaintiffs' photos from the Zimprichs and LOTF, who obtained them from Getty Images and George.

10

62. Despite being aware of Plaintiffs' prior lawsuit against the Zimprichs and LOTF and notwithstanding the fact they are on actual notice that products sold by the Zimprichs and LOTF may include unauthorized copies of copyrighted photographs, many of the defendants in the *Scheels* case continue to display and offer for sale hundreds of canvases, prints, and other products obtained from the Zimprichs and LOTF, including hundreds of products which do not include any official logos, markings, or stickers indicating that they were obtained from legitimate, authorized dealers.

63. In addition to Plaintiffs' copyright interest in the photographs themselves, the photographs involved in this lawsuit involve the trademarks, logos, colors, and other intellectual property of the various sports organizations and teams depicted. Accordingly, only officially licensed companies are authorized to create prints and canvases featuring these photographs.

64. In an effort to discourage counterfeiting, professional and college sports organizations and teams typically require that their officially licensed and authorized commercial dealers print official logos and markings on the products. Most officially authorized dealers also include holographic logo stickers on the products that include a unique identifying number that allows the legitimacy of the product to be verified. Certain companies, including Photo File, Inc., also print a unique product or customer code directly on the backside of the canvas or print to provide additional security. Examples of such security features are set forth here:

  

65.     Despite being in the sports memorabilia business and having a duty under Federal and Wisconsin law to ensure that their products are not infringing or counterfeit, many defendants in the *Scheels* action continue to display and offer for sale to the public hundreds of products which do not include any such official logos, markings, or stickers indicating that they were obtained from legitimate, authorized dealers.

66.     For example, a discovery inspection conducted in the *Scheels* case on November 10, 2015 of the Gameday Sports store located in the Bay Park Square Mall in Green Bay, WI operated by defendants Angela and Michael Cleary (hereinafter the "Clearys") revealed that they are continuing to sell canvases and other products (likely obtained from the Zimprichs or LOTF) that do not include any indicia of being legitimately licensed.

67.     Attached hereto as Exhibit 6 are true and correct copies of a sampling of photographs taken during the discovery inspection of the Clearys' Gameday Sports store.

68.     Although some of the canvases and other products displayed and being offered for sale by the Clearys in their Gameday Sports store did appear to be purchased legitimately from officially authorized dealers like Photo File (*e.g.* Ex. 6, Row 1 – identified by a green circle noting the existence of proof of legitimacy), they also were continuing to sell canvases that did not include any such proof of authenticity (*e.g.*, Ex. 6, Rows 2-7 – identified by a red circle noting the lack of any proof of authenticity).

69.     A discovery inspection conducted in the *Scheels* case on November 11, 2015 of Defendant Martin's Sports-4-Less store located in McHenry, Illinois revealed that Martin also is continuing to sell canvases and other products that do not include any indicia of being legitimately licensed.

70.     Attached hereto as Exhibit 7 are true and correct copies of photographs taken during the discovery inspection of Martin's Sports-4-Less store.

71.     A discovery inspection conducted in the *Scheels* case on February 22-23, 2016 of defendant Svehla's various Scott's Brewery Collectibles stores located in shopping malls throughout Wisconsin and Illinois revealed that Svehla also is continuing to sell several hundred canvases and other products that do not include any indicia of being legitimately licensed.

72.     Attached hereto as Exhibit 8 are true and correct copies of photographs taken during the discovery inspection of defendant Svehla's Scott's Brewery Collectibles stores.

### *Comp Licenses*

73.      Getty Images and George caused, enabled, facilitated, and otherwise materially contributed to a massive counterfeiting scheme in Wisconsin and Illinois that infringed Plaintiffs' copyrights by failing to take reasonable steps to monitor the use of Plaintiffs' photos that it provided to customers under "comp" licenses, including but not limited to LOTF.

74.     Upon information and belief, Defendant George, while an employee of Getty Images, provided the high-resolution digital copies of Plaintiffs' photographs to LOTF.

75.     Upon information and belief, George, acting on behalf of Getty Images and within the scope of his employment duties, provided photographs to LOTF through Getty Images' processes for allowing customers to download high-resolution digital copies of photographs, including through its "comp" licensing processes.

76.     Upon information and belief, Defendant George was fully aware at the time that he granted LOTF "comp" licenses and/or otherwise provided access to high-resolution copies of Plaintiffs' photos to LOTF that LOTF had no legitimate need for a composition license and that LOTF intended to use Plaintiffs' photos in commercial products.

77.     Upon information and belief, by granting access to Plaintiffs' photos to LOTF, Defendant George enabled, facilitated, encouraged, materially contributed to, and benefitted from LOTF's infringements of Plaintiffs' copyrights.

78.     Upon information and belief, Getty Images and George also provided high-resolution digital copies of hundreds of additional photographs owned by other Getty contributors to LOTF under similar "comp" licenses.

79.     Defendant George has admitted in his pleadings against Getty Images in the *Scheels* case that the conduct giving rise to Plaintiffs' claims against George "relate to acts committed by George in the course of and arising out of his employment at Getty using Getty's sales and licensing procedures and electronic sales platform." *Scheels*, Dkt. No. 255 at ¶ 30.

80.     Upon information and belief, in responding to Plaintiffs' demand for information and subpoena in *Zimprich*, Getty Images either (i) intentionally and knowingly withheld relevant information regarding the actual number of photographs provided to LOTF; or (ii) failed to take reasonable steps to track the "comp" licenses issued to LOTF and failed to conduct a reasonable search of its records in making its response.

81.     Upon information and belief, Defendant George provided copies of Plaintiffs' photos to LOTF and third parties under "comp" licenses for purposes of building and establishing business relationships with customers in order to benefit Getty Images and to further Getty Images' substantial interest in building customer relationships and securing a role in the commercial licensing market for sports photos.

82.     Upon information and belief, Defendant George's actions benefitted himself as well as Getty Images by building and establishing business relationships with customers,

including LOTF and other defendants in this action, and further promoting Getty Images' brand name and commercial photo services to local businesses.

83.    Upon information and belief, a principal function of Defendant George's employment at Getty Images was to establish and build customer relationships, and providing "comp" licenses to customers was one way of doing that.

84.    Upon information and belief, Defendant George was able to grant "comp" licenses and otherwise distribute copies of Plaintiffs' photographs to Getty Images' customers, including LOTF, only through and due to his position at Getty Images.

85.    Upon information and belief, Defendant George was not the only Getty Images employee that issued/approved "comp" licenses to sports memorabilia dealers in Wisconsin on behalf of Getty Images.

86.    Upon information and belief, Getty Images is and was in the best position to prevent abuses of the "comp" licensing process, as the employer of Defendant George and others similarly situated, and yet it has failed to do so.

87.    Upon information and belief, other Getty Images account managers and customer relations specialists, particularly in the Sports department, routinely grant "comp" licenses to customers in exchange for personal gifts and other benefits from Getty Images' clients.

88.    Upon information and belief, Getty Images was or should have been aware that Defendant George and other account managers and customer relations specialists, particularly in the Sports department, routinely grant "comp" licenses to customers that they know do not have a legitimate need for such limited use layout licenses in exchange for personal gifts and benefits.

89.    Upon information and belief, Getty Images encouraged Defendant George and other account managers and other employees specializing in customer relations, particularly in

the Sports department, to liberally grant "comp" licenses in order to build client relationships in order to benefit Getty Images.

90.     Upon information and belief, Getty Images was or should have been aware that Defendant George and other account managers and other employees specializing in customer relations, particularly in the Sports department, were granting an excessive and unreasonable number of "comp" licenses to customers.

91.     Upon information and belief, Getty Images was or should have been aware that its customers, particularly in the Sports department, were abusing the "comp" license process to obtain photographs that they intended to use outside of the terms and restrictions in the "comp" license.

92.     Upon information and belief, Getty Images does not have a policy or practice, and has not implemented an automated system, requiring account managers to advise/remind customers and clients that a "comp" license is set to expire or to request confirmation that the customer used the photograph only for internal layout purposes.

93.     Getty Images violated its contributor agreements with Plaintiffs and further acted negligently and/or recklessly by failing to report "comp" licenses to contributing photographers, such as Plaintiffs, even though Getty Images considers these to be licenses.

94.     Upon information and belief, Getty Images does not monitor recipients of "comp" licenses to determine if and how the images were ultimately used.

95.     Upon information and belief, Getty Images does not limit the number of "comp" licenses that may be granted to a single customer.

96.     Upon information and belief, Getty Images failed to properly train its employees to protect against abuses of the "comp" license process.

97.     Upon information and belief, despite being aware of Plaintiffs' claims and concerns regarding the widespread unauthorized use of photographs by Wisconsin sports memorabilia dealers, Getty Images failed to take steps to investigate whether other similar licenses had been improperly granted to sports memorabilia dealers, particularly in Wisconsin.

### *Newspaper Licenses*

98.     Getty Images and George caused, enabled, facilitated, and otherwise materially contributed to the massive counterfeiting scheme in Wisconsin and Illinois that infringed Plaintiffs' copyrights by failing to take reasonable steps to monitor the use of Plaintiffs' photos that it provided to customers under "Editorial-Newspaper" licenses, including but not limited to the Zimprichs and Winiecki.

99.     Upon information and belief, Getty Images also provided high-resolution digital copies of numerous additional photographs owned by other Getty contributors to the Zimprichs under similar "newspaper" licenses.

100.     Upon information and belief, Getty Images granted at least 148 "Editorial-newspaper" licenses to Winiecki.

101.     Upon information and belief, when agreeing to grant "newspaper" or other editorial licenses to the Zimprichs, Getty Images was or should have been aware that the photographs actually were intended to be used to create commercial sports memorabilia because the Zimprichs identified "On 2 the Field" as the intended end user (i.e. "final client") of the photograph.

102.     Upon information and belief, when agreeing to grant "Editorial-newspaper" licenses to Winiecki, Getty Images was or should have been aware that the photographs were intended to be used to create commercial sports memorabilia because Winiecki repeatedly

17

identified "self" or "Jeff's Sports" or "jsports" as the intended end users (*i.e.*, the "final client") of the photographs being acquired under these "newspaper" licenses.

103.    Upon information and belief, if Getty Images had conducted a simple internet search it would have determined that the final end users that the Zimprichs and Winiecki reported to Getty Images (*i.e.*, "On 2 the Field" and "Jeff's Sports" respectively) are commercial sports memorabilia dealers in Wisconsin, not newspapers.

104.    Upon information and belief, Getty Images failed to take reasonable steps to monitor the use of Plaintiffs' photos that it provided to customers under "newspaper" licenses, including by failing to confirm that the individual seeking the license actually works for a newspaper.

105.    Upon information and belief, since at least April 2014 Getty Images was aware of Plaintiffs' claims for infringement against the Zimprichs and that the claims involved violations of "Editorial-newspaper" licenses.

106.    Upon information and belief, despite being aware of Plaintiffs' claims and concerns regarding the widespread unauthorized use of photographs by Wisconsin sports memorabilia dealers, Getty Images did not disclose that it also granted identical "Editorial-newspaper" licenses to other sports memorabilia dealers located in Wisconsin who subsequently used Plaintiffs' photographs in commercial products.

107.    Upon information and belief, Getty Images granted such "editorial" newspaper licenses to the Zimprichs and Winiecki, and others, despite knowing that the customers intended to make commercial uses of the photos.

108.    Upon information and belief, Getty Images granted "editorial" licenses to customers seeking NFL content after April 1, 2009 despite knowing that the customers intended

to make commercial uses of the photos because Getty Images' license from the NFL authorizing Getty Images to make commercial sales expired at that time and thus, if Getty Images did not grant editorial licenses, then it would have lost the customers and licensing fees to the NFL's new licensing partner, the Associated Press ("AP").

## COUNT I
## DIRECT, CONTRIBUTORY, and VICARIOUS COPYRIGHT INFRINGEMENT
### (AGAINST BOTH DEFENDANTS)

109.    Plaintiffs repeat and re-allege each of the above allegations as if set forth fully herein.

110.    Plaintiffs created and own all copyrights in and to the creative works identified herein and in all exhibits hereto.

111.    Plaintiffs' copyrights in and to photographs that are at issue in this action have been registered with the United States Copyright Office as set forth in Exhibit 1.

112.    Defendants provided access to Plaintiffs' photos to various third parties, including to defendants in the *Scheels* and *Zimprich* cases, who directly infringed Plaintiffs' copyrights as set forth herein and in the pleadings and rulings in the *Scheels* and *Zimprich* cases.

113.    Defendants directly infringed Plaintiffs' copyrights by exceeding the limited license granted to Getty Images in the Contributor Agreements and permitting unlicensed uses of Plaintiffs' photos by allowing access to high-resolution copies of hundreds of Plaintiffs' copyrighted photos and as set forth more fully above.

114.    Defendants are contributorily and/or vicariously liable for the copyright infringements that have been committed by third parties and other members of the counterfeiting conspiracy detailed above, including the defendants in *Zimprich* and *Scheels*.

115. Upon information and belief, at the time that Defendants provided copies of Plaintiffs' photos to these third parties, Defendants knew or had reason to know that these parties intended to use Plaintiffs' photos to create posters, prints, canvases, and other commercial products without a license.

116. Upon information and belief, Defendants had the right and practical ability to control or prevent the subsequent infringing uses of Plaintiffs' photos, including by not providing copies of or access to Plaintiffs' photos to third parties and/or properly monitoring the licensees' uses of photos.

117. Upon information and belief, Defendants benefitted directly from the infringing acts of third parties, including Winiecki, the Zimprichs and LOTF, by receiving licensing fees, establishing and growing Getty Images' business relationship with customers, and promoting its brand name.

118. Upon information and belief, Defendants thus knowingly caused, enabled, and/or materially contributed to the unauthorized and infringing uses of Plaintiffs' photos.

119. Upon information and belief, Defendants intentionally induced, materially contributed to, and otherwise facilitated the directly infringing acts carried out by the defendants in the *Scheels* and *Zimprich* cases.

120. Upon information and belief, Defendants were aware, or should have been aware, that the subsequent use of Plaintiffs' photos in commercial products was unlicensed and unauthorized.

121. Upon information and belief, Getty Images is liable for any conduct, acts, or omissions committed by Defendant George because (i) he was acting within the scope of his

employment, (ii) provided copies of Plaintiffs' photographs to third parties through Getty Images' licensing processes, and (iii) acted, at least in part, to benefit Getty Images.

122.    Upon information and belief, Defendants infringed Plaintiffs' copyrights by granting "comp" licenses to parties they knew or reasonably should have known intended to make commercial uses of the photos and granting "editorial-newspaper" licenses to parties that they knew or reasonably should have known intended to make commercial uses of the photos.

123.    Defendants' actions alleged herein were willful, knowing, intentional, and/or reckless.

124.    Upon information and belief, Getty Images' acts and omissions alleged herein were willful under the law, including because Getty Images acted recklessly in failing to monitor the activity of its customers.

125.    Upon information and belief, Getty Images' acts and omissions alleged herein were willful under the law, including because Getty Images acted recklessly in failing to monitor the conduct of its employees and agents, including but not limited to Defendant George, and failed to establish reasonable policies, practices, or procedures to prevent its employees from granting an excessive number of "comp" licenses to a single company or to prevent such licenses from being granted to clients that would not have a legitimate need for a layout or composition license.

126.    Upon information and belief, Getty Images' acts and omissions alleged herein were willful under the law, including because Getty Images acted recklessly in failing to properly train its employees and agents, including but not limited to Defendant George, with respect to granting "comp" licenses and "newspaper" licenses.

127.    Upon information and belief, Getty Images' acts and omissions alleged herein were willful under the law, including because Getty Images acted recklessly in failing to dismiss Defendant George promptly upon discovering his involvement in the infringements by sports memorabilia companies in Wisconsin, particularly the number of "comp" licenses he had granted to LOTF.

128.    Upon information and belief, despite being aware of the nature and scope of Plaintiffs' claims in the *Scheels* and *Zimprich* cases, Getty Images has failed to take any steps to investigate the use of other photographs obtained by LOTF, the Zimprichs, or Winiecki and has not taken steps to ensure compliance with licenses that it issued to these customers.

129.    Upon information and belief, despite being aware of the duplicitous and egregious practices of many of its customers in the Wisconsin sports memorabilia market, Getty Images has failed to take any steps to alert local authorities to a widespread and ongoing counterfeiting scheme.

130.    Upon information and belief, Getty Images also has failed to take any steps to alert the relevant sports teams and leagues to a widespread and ongoing counterfeiting scheme that Getty Images knows violates the intellectual property rights of these organizations and companies.

131.    Upon information and belief, Getty Images also has failed to take any steps to alert its contributing photographers who own copyrights in other photographs provided to defendants in the *Scheels* or *Zimprich* cases that their copyrights also may have been infringed and instead has withheld that information intentionally so that Getty Images itself may attempt to pursue improper settlements with these infringers.

132.   Upon information and belief, Getty Images also infringed Plaintiffs' copyrights by continuing to display, publish, distribute, license, sublicense, transfer, and/or sell copies of Plaintiffs' photos after Plaintiffs terminated their contracts with Getty Images.

133.   When Getty Images' relationship with Stluka and Boehm terminated in 2009 and 2012 respectively, Getty Images was not authorized to distribute, license, sublicense, transfer, or sell copies of Plaintiffs' photos.

134.   Although its license terminated, Getty Images continued to copy, distribute, license, and otherwise allow its customers to access copies of Plaintiffs' photographs.

135.   The conduct alleged herein demonstrates that Getty Images' infringements were willful under the law.

136.   Plaintiffs seek all damages recoverable under the Copyright Act, including statutory or actual damages, including Getty Images' profits attributable to the infringements and damages suffered as a result of the lack of compensation, credit, and attribution and from any diminution in the value of Plaintiffs' copyrighted works.

137.   Plaintiffs also seek all attorneys' fees and any other costs incurred in pursuing and litigating their claims in this case.

## COUNT II
## BREACH OF CONTRACT
## (AGAINST GETTY IMAGES)

138.   Plaintiffs repeat and re-allege each allegation set forth above as if set forth fully herein.

139.   Getty Images breached its contracts with Plaintiffs through the foregoing acts.

140.   Plaintiffs' Contributor Agreements with Getty Images expressly provided that all copyrights to their respective photos remained with Plaintiffs.

141.    Section 5 of Plaintiffs' Contributor Agreements with Getty Images required Getty Images to charge license fees to customers and then pay a percentage of that fee to Plaintiffs as a royalty.

142.    Section F.2 of Plaintiffs' Contributor Agreements with Getty Images required Getty Images to negotiate all licenses "on arms-length terms."

143.    Getty Images breached its contractual obligations by granting an excessive number of "comp" licenses to customers, including but not limited to those identified herein, and doing so in negotiations that were not "on arms-length terms," including because Getty Images and its employees and agents were receiving benefits from "comp" licensees that were not disclosed to Plaintiffs.

144.    Getty Images breached the covenants of good faith and fair dealing implied in its contracts with Plaintiffs through the foregoing acts, omissions, and misconduct.

145.    Getty Images breached the covenants of good faith and fair dealing implied in its contracts with Plaintiffs by failing to inform Plaintiffs that it granted hundreds of "comp" licenses to third parties without charging licensing fees or making any effort to monitor compliance with the license terms.

146.    Section F.4 of Plaintiffs' Contributor Agreements with Getty Images precluded Getty Images from granting "royalty-free use" licenses without Plaintiffs' prior written consent.

147.    Upon information and belief, Getty Images breached this contractual restriction by granting licenses that permitted "royalty-free use" of Plaintiffs' photographs, including to Getty Images' Premium Access customers and to Photo File, Inc.

148.    Upon information and belief, all Premium Access licenses that Getty Images granted to customers pertaining to Plaintiffs' photos were subscription-based and allowed

customers to reuse Plaintiffs' images without paying additional licensing fees and to renew or extend expiring Premium Access licenses without paying additional fees to use photographs acquired under the expiring license.

149.    Getty Images' subscription-based Premium Access licenses all amount to and improperly permit "royalty-free use" of content, including Plaintiffs' photos.

150.    Upon information and belief, the license or licenses that Getty Images granted to Photo File were subscription-based and permitted reuse of Plaintiffs' images without requiring Photo File to track such uses, track how many products were sold that included Plaintiffs' photos, or to pay additional license fees for repeated uses and sales of Plaintiffs' photos.

151.    Getty Images' subscription-based license to Photo File amounts to and improperly permits "royalty-free use" of content, including Plaintiffs' photos.

152.    Because the restrictions stated in Section F.4 of Plaintiffs' Contributor Agreements impose a restriction on Getty Images' license, Getty Images' violation of that provision as set forth herein also constitutes copyright infringement.

153.    Section 10.2 of Plaintiffs' Contributor Agreements with Getty Images required Getty Images to report open licenses upon termination.

154.    Getty Images breached its contractual obligations by failing to report open licenses to Plaintiffs at the time of termination, including any Premium Access licenses and licenses to Photo File that allowed continuing use of Plaintiffs' photos beyond termination.

155.    Getty Images breached its contractual obligations by denying Plaintiffs' repeated requests through counsel for information regarding all "comp" licenses involving Plaintiffs' photos that it had issued to its customers.

156.     Plaintiffs seek all damages recoverable against Getty Images under their respective contracts and the applicable state laws.

## COUNT III
## REQUEST FOR DECLARATORY JUDGMENT

157.     Plaintiffs repeat and re-allege each allegation set forth above as if set forth fully herein.

158.     Plaintiffs entered into contributor agreements with Getty Images for the limited purpose of having Getty Images sell ordinary, prospective licenses to legitimate customers.

159.     Plaintiff Stluka terminated his relationship with Getty Images in 2009.

160.     Plaintiff Boehm terminated his relationship with Getty Images in 2012.

161.     Section 2.1 of Plaintiffs' contributor agreements with Getty Images expressly reserved all copyrights in contributed photographs to Plaintiffs.

162.     Section 9.1 of Plaintiffs' contributor agreements with Getty Images purported to grant Getty Images authority to pursue litigation and settle claims for unauthorized uses of Plaintiffs' photographs.

163.     Relying on this standard provision in Getty Images' standard contributor agreements, Getty Images routinely holds itself out as an agent for its contributing photographers by claiming to third parties that it is entitled to pursue and settle unlicensed uses, license violations, and other copyright infringements related to its contributors' photos.

164.     Upon information and belief, Getty Images intentionally reports settlements or releases obtained for its contributing photographers as "licenses" in order to deceive its contributors into believing that these are typical, legitimate prospective licenses and to avoid inquiries from its contributors into the terms of such settlements, including why Getty Images

failed to seek appropriate damages allowed under the law for copyright infringements as a fiduciary would be required to do.

165.    Other federal courts have recently held that companies like Getty Images that specialize in licensing stock photography on behalf of contributors act as agents for their contributing photographers in the licensing transactions and, as agents, are entitled to make and settle claims of infringement on behalf of the copyright owner principal, including through formal settlements or so-called "retroactive" or *ex post facto* licenses.

166.    Getty Images is aware of these rulings as it is a named defendant in at least one of these cases.

167.    An actual controversy thus has arisen and now exists between Plaintiffs and Getty Images concerning whether Getty Images was Plaintiffs' agent and whether Plaintiffs own the exclusive right to make and settle claims for infringements of their copyrights.

168.    Plaintiffs thus desire and request a judicial determination of their rights in this regard in order to prevent Getty Images from usurping Plaintiffs' rights, as exclusive owners of the copyrights in their photographs at issue here, to make and pursue or settle and release claims for infringement of their copyrights.

169.    A judicial determination of the parties' rights and duties is necessary and appropriate at this time and under the circumstances in order to resolve this controversy between the parties and for the parties to be aware of their rights and in order to assess and determine their legal options.

170.    Specifically, Plaintiffs seek a judicial ruling and declaratory judgment that Section H of their Contributor Agreements and Section 9 of the Standard Terms and Conditions attached thereto were invalid and void *ab initio* and thus Getty Images was not properly entitled

to make claims or settle/grant releases of claims (including through formal settlements or so-called "retroactive licensing") related to infringements of Plaintiffs' copyrights, including but not limited to claims asserted in this action against any other defendants.

171.   Under the Copyright Act, only copyright owners and/or parties that own exclusive rights protected under Section 501 of the Copyright Act have standing to pursue and settle claims of infringement.

172.   Section 11.7 of Plaintiffs' Contributor Agreements expressly disclaimed that any "principal-agent" relationship existed and thus Getty Images was contractually precluded from acting on their behalf in copyright infringement disputes.

173.   Getty Images (i) was not granted any ownership interest in Plaintiffs' copyrights; (ii) disclaimed that it was Plaintiffs' agent; and (iii) Getty Images offered for license its own content and thus actually competed with Plaintiffs for licensing sales.

174.   Getty Images, therefore, cannot have any valid authority under the Copyright Act to make, pursue, settle, or release claims for infringement of Plaintiffs' copyrights.

175.   Getty Images also cannot be validly authorized to act as Plaintiffs' agent for purposes of settling copyright disputes if it is not willing to provide information regarding open licenses to Plaintiffs and claims to have no obligation to do so.

176.   Section 9.1 of Plaintiffs' Contributor Agreements purported to give Getty Images "absolute discretion" in making and settling claims.  This provision conflicts with Getty Images' expressly denying that it is an agent for Plaintiffs.

177.   Plaintiffs thus further seek a declaratory judgment that, even if Sections H and 9 of their Contributor Agreements are not invalid, that they did not survive termination of the

Contributor Agreements because Getty Images ceased to be Plaintiffs' licensor and thus the survival provision in Section M is invalid and unlawful.

178.     Plaintiffs thus further seek a declaratory judgment that, even if Sections H and 9 of their Contributor Agreements are not invalid, Section 9.1 precludes Getty Images from settling or releasing Plaintiffs' claims against the defendants in the *Scheels* case and Getty waived such rights.

179.     Plaintiffs also seek a declaration that they own all copyrights in the photographs identified in Exhibit 9 attached hereto, which Getty Images wrongly contends are photographs to which Plaintiffs transferred copyright to Getty.  Plaintiffs created each of these photographs and did not transfer their copyrights to Getty Images.  Plaintiffs' Contributor Agreements expressly provide that Plaintiffs retained copyrights in the photographs submitted to Getty Images for licensing.  Plaintiffs did not subsequently transfer their copyrights in these photographs to Getty Images.

180.     As to each of these issues, an actual dispute and controversy now exists between the parties for which Plaintiffs seek judicial resolution.

## COUNT IV
### REQUEST FOR DECLARATORY JUDGMENT
### AND CLAIM FOR BREACH OF FIDUCIARY DUTIES
### (AGAINST GETTY IMAGES)

181.     Plaintiffs repeat and re-allege each allegation set forth above as if set forth fully herein.

182.     In the alternative, if Section 9 is not invalid and Getty Images was validly authorized to pursue and settle claims on Plaintiffs' behalf, then Plaintiffs seek a declaration that Getty Images was Plaintiffs' agent and owed fiduciary duties to Plaintiffs to act in their best interests and could not act where it has a conflict of interest and could not engage in self-dealing.

183.   Getty Images routinely holds itself out as an agent for its contributing photographers by licensing their photographs and also by claiming to third parties that it is entitled to pursue and settle unlicensed uses, license violations, and other copyright infringements related to its contributors' photos.

184.   To the extent that Getty Images claims that it is entitled to pursue, settle, or release copyright claims on behalf of its contributors, then Getty Images must claim such authority as agents for the copyright owners.

185.   If valid, Section 9.1 of Plaintiffs' Contributor Agreements purports to grant Getty Images' "absolute discretion" to make and settle copyright claims on Plaintiffs' behalf.  Such authority imposes fiduciary duties on Getty Images regardless of the agency disclaimer provision.

186.   Getty Images cannot simultaneously claim to have authority to act on behalf of its contributors with respect to their exclusive rights under the Copyright Act and yet disclaim any agency obligations to deal with the copyright owners fairly and honestly and not to engage in undisclosed self-dealing.

187.   Getty Images had actual possession and control over Plaintiffs' property, in the form of copyrighted photos.

188.   Getty Images did not disclose the fact or terms of licenses it had granted ostensibly on behalf of Plaintiffs.

189.   Getty Images did not disclose to Plaintiffs what benefits it received by providing "comp" licenses of Plaintiffs' photos to third parties.

190.   Getty Images exercised discretionary and *de facto* control over Plaintiffs' copyrighted works and exploited its position for its own benefit.

191.    Getty Images is a sophisticated commercial entity with tremendous experience dealing with this precise legal issue, whereas Plaintiffs are individual photographers without sophisticated experience negotiating agency-waiver agreements.

192.    Despite holding itself out as Plaintiffs' agent, Getty Images failed to deal with Plaintiffs fairly and engaged in undisclosed self-dealing.

193.    Getty Images breached its fiduciary obligations to Plaintiffs through the acts, omissions, and misconduct detailed herein.

194.    Upon information and belief, Getty Images negotiated settlements on behalf of Plaintiffs and/or involving Plaintiffs' photos without disclosing that fact to Plaintiffs.

195.    Getty Images breached its fiduciary duties to Plaintiffs by refusing to provide information to Plaintiffs regarding licenses that Getty Images granted to customers, for which Plaintiffs must be intended beneficiaries.

196.    Getty Images breached its fiduciary duties to Plaintiffs by including their photos in settlements that Getty Images negotiated with infringers without disclosing the terms or Getty Images' own benefits to Plaintiffs, indeed without disclosing any such settlements to Plaintiffs at all.

197.    Getty Images breached its fiduciary obligations by failing to track and monitor the use of Plaintiffs' photos, failing to prevent the abuse of "comp" licensing, and failing to properly train its employees.

198.    Plaintiffs seek all damages recoverable against Getty Images under applicable state law and/or common law, including punitive damages.

31

**WHEREFORE,** Plaintiffs respectfully pray for judgment on their behalf and for the following relief:

1.      A jury trial on all issues so triable;

2.      A preliminary and permanent injunction against Defendants from copying, displaying, distributing, advertising, promoting, and/or selling any of Plaintiffs' works identified herein, and requiring Defendants to deliver to the Court for destruction or other appropriate disposition all relevant materials, including digital files of Plaintiffs' photographs that are in the control or possession or custody of Defendants;

3.      All allowable damages under the Copyright Act, including, but not limited to, statutory or actual damages, including damages incurred as a result of Plaintiffs' loss of licensing revenue and Defendants' profits attributable to infringement, and damages suffered as a result of the lack of credit and attribution;

4.      All allowable damages caused by and/or resulting from Getty Images' breach of contract;

5.      All allowable damages caused by and/or resulting from Getty Images' breach of its fiduciary duties to Plaintiffs;

6.      A declaration of their rights as indicated above;

7.      Plaintiffs' full costs, including litigation expenses, interest, and any other amounts authorized under law, and attorneys' fees incurred in pursuing and litigating this matter;

8.      Any other relief authorized by law, including punitive and/or exemplary damages; and

9.      For such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Dated May 11, 2016

                                        Respectfully submitted,

By:

                                          Kevin P. McCulloch
                                          Nate A. Kleinman
                                          The McCulloch Law Firm, PLLC
                                          155 East 56th Street
                                          New York, New York 10022
                                          T: (212) 355-6050
                                          F: (646) 308-1178

                                          *Attorneys for Plaintiffs*