# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SCOTT BOEHM; and DAVID STLUKA, | |
| Plaintiffs, | Case No. 16-CV-0311 (JDP) |
| v. | |
| GETTY IMAGES (US), INC., et al. | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF GETTY IMAGES (US), INC.'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO STAY PENDING ARBITRATION

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................... 2

    A.      Plaintiffs' Contributor Agreements with Getty Images Include Broad
        Agreements to Arbitrate Disputes. ........................................................... 2

    B.      Plaintiffs' Complaint ............................................................................... 3

    C.      Procedural History .................................................................................. 5

    D.      Order Compelling Arbitration of Plaintiffs' Claims Against Getty Images
        in the NFL Action .................................................................................... 6

    E.      Getty Images' Arbitration Demand ......................................................... 7

III.    ARGUMENT ......................................................................................................... 7

    A.      The Court Should Dismiss Plaintiffs' Claims Against Getty Images Under
        Rule 12(b)(1) or Rule 12(b)(3) Because Those Claims Are Subject to the
        Broad Arbitration Provision in the Contributor Agreements. ................... 7

        1.      The Parties Agreed to Arbitrate and Clearly and Unmistakably
            Agreed to Delegate the Question of Arbitrability to the Arbitrator. ........ 8

        2.      The Broad Scope of the Arbitration Provision Encompasses All of
            Plaintiffs' Claims Against Getty Images. ................................................. 9

        3.      The Court Should Dismiss Plaintiffs' Claims Against Getty Images
            Under Governing Seventh Circuit Law. .................................................. 10

    B.      The Court Should Dismiss Plaintiffs' Claims Against John George Under
        Rule 12(b)(1) or 12(b)(3) Because Those Claims Are Arbitrable. .................... 11

        1.      Plaintiffs' Claims Against Mr. George Are Arbitrable Because
            They Arise Out of Actions Mr. George Allegedly Took as Getty
            Images' Agent. ..................................................................................... 13

        2.      Plaintiffs' Claims Against Mr. George are Arbitrable Because
            They are Intertwined with Their Claims Against Getty Images. ............ 14

    C.      In the Alternative, the Court Should Stay This Lawsuit or Any Claims It
        Declines to Dismiss in Favor of Arbitration. ......................................... 17

IV.     CONCLUSION .................................................................................................. 19

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Apollo Computer, Inc. v. Berg*,
   886 F.2d 469 (1989) ..................................................................................8

*Arthur Andersen LLP v. Carlisle*,
   556 U.S. 624 (2009) ................................................................................12

*Barton Enters., Inc. v. Cardinal Health, Inc.*,
   No. 10-CV-324, 2010 WL 2132744 (E.D. Mo. May 27, 2010) ...........................15

*Boehm, et al. v. Scheels All Sports, Inc., et al.*,
   15-CV-379-JDP (W.D. Wis. 2015) ....................................................5, 6, 12, 17

*ChampionsWorld, LLC v. U.S. Soccer Fed'n, Inc.*,
   487 F. Supp. 2d 980 (N.D. Ill. 2007).................................................................17

*Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*,
   417 F.3d 727 (7th Cir. 2005) ............................................................................11

*Contec Corp. v. Remote Sol. Co.*,
   398 F.3d 205 (2d Cir. 2005) ...............................................................................8

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ........................................................................7, 8, 17, 18

*F. Hoffmann-La Roche Ltd. v. Qiagen Gaithersburg, Inc.*,
   730 F. Supp. 2d 318 (S.D.N.Y. 2010) ...............................................................16

*FarmedHere, LLC v. Just Greens, LLC*,
   No. 14-CV-370, 2014 WL 2726707 (N.D. Ill. June 16, 2014) ...........................11

*Faulkenberg v. CB Tax Franchise Sys., LP*,
   637 F.3d. 801 (7th Cir. 2011) .......................................................................2, 11

*Grigson v. Creative Artists Agency, L.L.C.*,
   210 F.3d 524 (5th Cir. 2000) ............................................................................16

*Halim v. Great Gatsby's Auction Gallery, Inc.*,
   516 F.3d 557 (7th Cir. 2008) ..............................................................................2

*Heller Fin., Inc. v. Midwhey Powder, Co.*,
   883 F.2d 1286 (7th Cir. 1989) ..........................................................................11

ii

*Henry Techs. Holdings, LLC v. Giordano*,
   No. 14-CV-63-JDP, 2014 WL 3845870 (W.D. Wis. Aug. 5, 2014) ....................................14

*Holden v. Deloitte & Touche LLP*,
   390 F. Supp. 2d 752 (N.D. Ill. 2005)....................................................................................13

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002) ..................................................................................................................8

*Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*,
   659 F.2d 836 (7th Cir. 1981)..................................................................................................15

*In re Oil Spill by Amoco Cadiz*,
   659 F.2d 789 (1981) ...............................................................................................................13

*James v. McDonald's Corp.*,
   417 F.3d 672 (7th Cir. 2005) ...................................................................................................7

*Kahn v. Peak*,
   No. 91 C 7148, 1992 WL 142297 (N.D. Ill. June 18, 1992) ..................................................13

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*,
   174 F.3d 907 (7th Cir. 1999) ...................................................................................................9

*Leff v. Deutsche Bank AG*,
   No. 08-CV-733, 2009 WL 1380819 (N.D. Ill. May 14, 2009) ..............................................14

*Letizia v. Prudential Bache Sec., Inc.*,
   802 F.2d 1185 (9th Cir. 1986) ...............................................................................................13

*Levin v. NC12, Inc.*,
   No. 10-CV-01606, 2011 WL 2582138 (N.D. Ill. June 29, 2011) .........................................15

*Morrie Mages & Shirlee Mages Found. v. Thrifty Corp.*,
   916 F.2d 402 (7th Cir. 1990) .................................................................................................18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ...................................................................................................7, 10, 18

*MS Dealer Serv. Corp. v. Franklin*,
   177 F.3d 942 (11th Cir. 1999)................................................................................................15

*Muzumdar v. Wellness Int'l Network, Ltd.*,
   438 F.3d 759 (7th Cir. 2006) .................................................................................................11

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
   724 F.3d 1069 (9th Cir. 2013) .................................................................................................8

DWT 29687668v7 0053349-000118

*Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*,
713 F. Supp. 2d 734 (N.D. Ill. 2010)....................................................................16

*Perry v. Thomas*,
482 U.S. 483 (1987) .............................................................................................7

*PRM Energy Sys., Inc. v. Primenergy, LLC*,
592 F.3d 830 (8th Cir. 2010) ........................................................................15, 16

*Pryner v. Tractor Supply Co.*,
109 F.3d 354 (7th Cir. 1997) .............................................................................18

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010) .............................................................................................8

*Spinelli et al. v. National Football League et al.*,
No. 13-cv-7398-RWS (S.D.N.Y.) ...................................................................1, 6, 9

*United Steel Workers Int'l Union v. TriMas Corp.*,
531 F.3d 531 (7th Cir. 2008) ..........................................................................8, 10

*Vershaw v. Nw. Nat'l Life Ins. Co.*,
979 F.2d 557 (7th Cir. 1992) ...............................................................................2

*Volkswagen of Am. v. Sud's of Peoria, Inc.*,
474 F.3d 966 (7th Cir. 2007) .............................................................................18

*Yellow Cab Affiliation, Inc. v. N.H. Ins. Co.*,
No. 10-cv-6896, 2011 WL 307617 (N.D. Ill. Jan. 28, 2011) ............................8, 9

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*,
417 F.3d 682 (7th Cir. 2005) ..........................................................................1, 12

**Federal Statutes**

9 U.S.C. § 1, *et seq.* ("FAA")......................................................... *passim*

**Rules**

AAA Commercial Arbitration Rule 7(a)................................................9

Federal Rule of Civil Procedure 12(b)(1)................................... *passim*

Federal Rule of Civil Procedure 12(b)(3)................................... *passim*

ICC Rules of Arbitration, Art. 6(2) .....................................................9

## I.    INTRODUCTION

Plaintiffs Scott Boehm and David Stluka assert a scattershot set of copyright infringement, breach of contract, declaratory judgment and breach of fiduciary duty claims all relating to photographs that Plaintiffs exclusively licensed to Getty Images (US), Inc. ("Getty Images") under agreements (the "Contributor Agreements") with broad arbitration provisions that require Plaintiffs to arbitrate **all** of those claims and delegate any questions about arbitrability to the arbitrator.  Plaintiffs are well aware of these requirements, because they were ***ordered to arbitrate materially identical claims against Getty Images*** in *Spinelli et al. v. National Football League et al.*, No. 13-cv-7398-RWS (S.D.N.Y.) (the "NFL Action").  This Court should similarly find that Plaintiffs' claims against Getty Images are arbitrable.

In a transparent attempt to distinguish this case from the NFL Action, and to do an end run around their contractual agreements to arbitrate, Plaintiffs also assert copyright infringement claims against a former Getty Images employee, defendant John George, alleging that he provided certain images governed by the Contributor Agreements to Legends of the Field, LLC ("LOTF") under "comp" licenses,[1] knowing that LOTF planned to make commercial use of those images, in exchange for personal gifts and benefits from LOTF.  Compl. ¶¶ 75-76, 87-88.  These claims are premised on Plaintiffs' allegations (which Getty Images disputes) that Mr. George's action occurred within the scope of his employment with Getty Images, and thus, in his capacity as Getty Images' employee and agent.  *Id.* ¶¶ 75, 79, 121.  This attempt to avoid arbitration fails because the Seventh Circuit recognizes several applicable theories under which claims against non-signatories to arbitration agreements can be arbitrated, including agency and estoppel.  *See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005).  Given Mr. George's alleged role as Getty Images' agent in providing images to LOTF, and the intertwined nature of Plaintiffs' claims against Mr. George and Getty Images, the Court should

---

[1] A "comp" license is a long-established license used in the photography industry that allows use only for "personal, noncommercial use and test or sample use, including comps and layouts."  *See* www.gettyimages.com/Corporate/LicenseAgreements.aspx#Comping; Complaint [Dkt. 1] ("Compl.") ¶ 22.

find Plaintiffs' claims against Mr. George arbitrable on both agency and estoppel grounds.

Accordingly, Getty Images respectfully requests that the Court dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1), 12(b)(3) and/or section 4 of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), because all of Plaintiffs' claims are arbitrable, and under controlling Seventh Circuit law, this Court does not have the authority to compel arbitration at any of the locations agreed upon by the parties.[2]  *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d. 801, 808 (7th Cir. 2011).  Alternatively, to the extent the Court determines that any of the claims asserted in the Complaint are not arbitrable, Getty Images respectfully requests that the Court stay this case pursuant to 9 U.S.C. § 3, pending the resolution of the arbitration Getty Images has commenced against Plaintiffs.

## II.     BACKGROUND

### A.     Plaintiffs' Contributor Agreements with Getty Images Include Broad Agreements to Arbitrate Disputes.

Defendant Getty Images is a leading global digital media company, licensing a wide variety of photographic content to its customers, including sports-related still photographs.  *See* Compl. ¶¶ 3-5.  Plaintiffs are professional sports photographers who entered into identical Contributor Agreements with Getty Images in September 2004, each of which is entitled "News, Sport, Entertainment, Features, Publicity and Archive Brand Agreement."  Compl. ¶ 9 & Exs. 2, 3.

In the Contributor Agreements, Plaintiffs granted Getty Images a "worldwide, exclusive

---

[2] Getty Images does not waive and expressly reserves its right to compel arbitration. *See Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008) ("A party does not waive its right to arbitrate a dispute by filing a motion to dismiss or a motion to transfer venue."); *Vershaw v. Nw. Nat'l Life Ins. Co.*, 979 F.2d 557, 560 (7th Cir. 1992) (waiver "only applies when there has been the voluntary or intentional relinquishment of a known right"). In light of Getty Images' intent to enforce its right to arbitration, it is not seeking dismissal of the Plaintiffs' claims on the merits under Fed. R. Civ. P. 12(b)(6) before this Court.  However, Getty Images expressly reserves its right to challenge the legal sufficiency of Plaintiffs' claims in either this Court or in arbitration.

right and license" to, among other things, "reproduce, distribute, publish, transmit, broadcast, display, exhibit, crop, or enhance any Accepted Images in any medium or embodiment, now known or later developed," including the ability to exercise those rights "for any purpose reasonably related, in [Getty Images'] judgment, to the licensing and marketing of Accepted Images." *Id.*, Exs. 2 & 3, at § F.  The Contributor Agreements also granted Getty Images "the sole and absolute right to determine the terms and conditions of all licenses of the Accepted Images granted . . .and to determine the manner, if any, in which each Accepted Image may be marketed. *Id.*, Exs. 2, 3, at § C.

The Contributor Agreements contain broad arbitration agreements that require arbitration of any disputes arising from or in connection with the agreements.  Specifically, Section 11.8 of the Getty Images Standard Terms and Conditions that are incorporated into the Contributor Agreements, states, in relevant part:

> Any dispute ***arising out of or in connection with*** the [Contributor] Agreement shall be finally settled under the Commercial Rules of the American Arbitration Association ('AAA') or International Chamber of Commerce ('ICC') in Seattle, Washington, U.S.A., New York, New York, U.S.A, London, England, Paris, France or Frankfurt, Germany, both the applicable rules and the venue to be at Artist's discretion.

Compl., Exs. 2, 3 at § 11.8 (the "Arbitration Provision") (emphasis supplied).

### B.      Plaintiffs' Complaint

In their Complaint, filed more than three years after the Contributor Agreements were terminated, Compl., ¶¶ 18-19,[3] Plaintiffs assert a number of claims against Getty Images, as

---

[3] Getty Images disputes Plaintiffs' allegation that Mr. Stluka's Contributor Agreement terminated in 2009, since that agreement in fact terminated in the fall of 2012.  While the Court need not resolve that issue to decide this motion, Plaintiffs' allegation only emphasizes how long ago most of the alleged infringing actions by Getty Images and Mr. George occurred, since most of Plaintiffs' allegations focus on actions taken in the years leading up to the termination of those agreements.

DWT 29687668v7 0053349-000118

well as certain related claims against former Getty Images salesperson John George, all of which *arise out of or in connection* with the Contributor Agreements.

*First*, Plaintiffs assert direct copyright infringement claims against Getty Images and Mr. George based on allegations that they "exceed[ed] the limited license granted to Getty Images in the Contributor Agreements . . . by allowing access to high-resolution copies of hundreds of Plaintiffs' copyrighted photos," including through editorial licenses and comp licenses.   Compl. ¶¶ 113, 122.   Plaintiffs also allege that Getty Images infringed their copyrights by distributing or licensing certain of their images following termination of the Contributor Agreements, a claim that will depend on the timing of those terminations and the post-termination rights the Contributor Agreements granted to Getty Images.  *Id.* ¶¶ 133-34. To support their claims against Getty Images based on Mr. George's conduct, Plaintiffs assert that his conduct was "on behalf of Getty Images and within the scope of his employment duties."  *Id.* ¶ 75.   Plaintiffs also assert contributory and vicarious copyright infringement claims against Getty Images and Mr. George based on alleged infringing uses that various Wisconsin-based individuals and entities made of Plaintiffs' images they supposedly obtained directly or indirectly from Getty Images.  *Id.* ¶ 114.

*Second*, Plaintiffs claim that Getty Images breached the Contributor Agreements in numerous ways, including by granting comp licenses; failing to monitor, track or stop uses that exceeded the scope of the editorial and comp licenses it granted; granting supposedly "royalty-free licenses" through its Premium Access licensing model and its agreement with customer Photo File; and failing to provide supposedly required reporting on comp licenses and licenses open at the termination of Plaintiffs' agreements.  *Id.* ¶¶ 139-156.

*Third*, Plaintiffs seek declaratory judgment on the meaning of certain provisions of the

4

Contributor Agreements and Getty Images' compliance with those contractual provisions. *Id.* ¶¶ 158-180, 182.

**Finally**, Plaintiffs assert breach of fiduciary duty claims against Getty Images that stem directly from Plaintiffs' allegation that Getty Images was acting as their agent in exercising its rights and performing its obligations under the Contributor Agreements. *Id.* ¶¶ 182-198.

## C.    Procedural History

Plaintiffs originally brought their claims against Getty Images and Mr. George in another lawsuit pending in this Court, *Boehm, et al. v. Scheels All Sports, Inc., et al.*, 15-CV-379-JDP (W.D. Wis.) (the "Scheels Action"). In that action, originally filed on June 19, 2015, Plaintiffs asserted copyright infringement claims related to allegedly unauthorized uses of their images, principally in connection with sports memorabilia, against numerous Wisconsin-based sports memorabilia companies and against Mr. George—but **not** against Getty Images. *See* Scheels Action, Dkt. 1. After being served with Plaintiffs' Complaint, Mr. George asserted third-party claims for indemnity against Getty Images, claiming that Plaintiffs' claims against him "aris[e] out of his employment at Getty [Images]." *See id.*, Dkt. 255, ¶ 32.

On March 22, 2016, notwithstanding their agreement to arbitrate all claims arising from the Contributor Agreements, Plaintiffs filed a third party complaint against Getty Images in the Scheels Action, asserting materially identical claims as it now asserts in the Complaint in this lawsuit. *See id.*, Dkt. 351. On April 4, 2016, the Court *sua sponte* severed Plaintiffs' claims against Mr. George and Getty Images from the Scheels Action, along with John George's third party complaint against Getty Images, and directed Plaintiffs to file a separate lawsuit, s*ee id.*, Dkt. 364 at 1-2, which Plaintiffs subsequently did, and which is the subject of this motion.

Plaintiffs seek to hold Getty Images liable for contributory and vicarious copyright

5

infringement based on the infringements alleged in the Scheels Action, as well as a small number of infringements by LOTF and Dan and Ciara Zimprich (the "Zimprices") on which Plaintiffs obtained summary judgment as to liability in their separate copyright infringement lawsuit against LOTF and the Zimprices.  Compl. ¶¶ 114, 119.

> ### D.     Order Compelling Arbitration of Plaintiffs' Claims Against Getty Images in the NFL Action

This is not the first time that Plaintiffs and their counsel have sought to assert claims arising out of or in connection with their Contributor Agreements against Getty Images in litigation, in defiance of the Arbitration Provision in those agreements.  As noted above, Plaintiffs (along with several other contributing photographers), represented by their current counsel, asserted similar copyright infringement, breach of contract and breach of fiduciary duty claims against Getty Images in the NFL Action pending in the U.S. District Court for the Southern District of New York.  Plaintiffs' claims in the NFL Action are based on similar allegations of improper comp licensing, failures to monitor and track uses of images provided under such licenses, and alleged breaches of fiduciary duty associated with Getty Images' reporting and other obligations under the Contributor Agreements.  In an exhaustive opinion, Judge Sweet *granted Getty Images' motion to compel arbitration*, finding that the Arbitration Provision in the Contributor Agreements was a "broad arbitration clause" and requiring Plaintiffs to arbitrate *all* of their claims against Getty Images, which also included antitrust claims under the Sherman Act.  *See* NFL Action, Dkt. 102 at 26-45.[4]

---

[4] Despite having informed the Court in the NFL Action that they planned to "proceed with arbitrating their claims against Getty Images," NFL Action, Dkt. 106 at 1 n.1, Plaintiffs subsequently filed a Second Amended Complaint, asserting virtually identical claims against Getty Images to the claims the Court in the NFL Action had compelled to arbitration**,** and have opposed Getty Images' motion to again compel arbitration of those claims, which is currently pending decision by the Court.  *See* NFL Action, Dkt. 115, 149.

### E.    Getty Images' Arbitration Demand

Concurrently with filing this motion to dismiss, and pursuant to the Arbitration Provision in the Contributor Agreements, Getty Images has filed an arbitration against Plaintiffs and their companies with the American Arbitration Association ("AAA"), and served an arbitration demand on Plaintiffs (with copies sent to Plaintiffs' counsel of record in this case). *See* Declaration of Jonathan M. Lloyd ("Lloyd Decl."), ¶ 3 & Ex. A.

### III.    ARGUMENT

### A.    The Court Should Dismiss Plaintiffs' Claims Against Getty Images Under Rule 12(b)(1) or Rule 12(b)(3) Because Those Claims Are Subject to the Broad Arbitration Provision in the Contributor Agreements.

Plaintiffs' claims against Getty Images all arise from or in connection with the Contributor Agreements and fall squarely within the scope of the broad Arbitration Provision those agreements contain.  Accordingly, and consistent with settled Seventh Circuit law, the Court should dismiss all of Plaintiffs' claims against Getty Images under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(3), in favor of arbitration.

The FAA provides that "an agreement in writing to submit to arbitration an existing controversy . . . shall be valid, irrevocable and enforceable."  9 U.S.C. § 2.  The FAA manifests a liberal federal policy favoring arbitration agreements, and any doubts regarding the arbitrability of a dispute are to be resolved in favor of compelling arbitration.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *James v. McDonald's Corp.*, 417 F.3d 672, 676-77 (7th Cir. 2005).  Arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'."  *Perry v. Thomas*, 482 U.S. 483, 490 (1987) (citations omitted).  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts ***shall*** direct the parties to proceed to arbitration."  *Dean*

*Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).  Indeed, the Seventh Circuit has held that a party cannot avoid its contractual obligation to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *United Steel Workers Int'l Union v. TriMas Corp.*, 531 F.3d 531, 536 (7th Cir. 2008) (citation omitted).

        **1.**      **The Parties Agreed to Arbitrate and Clearly and Unmistakably Agreed to Delegate the Question of Arbitrability to the Arbitrator.**

The Supreme Court has repeatedly held that "'gateway' questions of 'arbitrability', such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" are properly resolved by the arbitrator, rather than by a court, where the parties have "clearly and unmistakably" so provided in their contractual agreement. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citing *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). Applying this principle, "[v]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (collecting cases); *see also*, *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 211 (2d Cir. 2005); *Yellow Cab Affiliation, Inc. v. N.H. Ins. Co.*, No. 10-cv-6896, 2011 WL 307617, at *4-5 (N.D. Ill. Jan. 28, 2011).  Similarly, at least one federal circuit court has held that an arbitration provision incorporating the arbitration rules of the International Chamber of Commerce ("ICC") delegates questions about arbitrability to the arbitrator.  *See Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 472-74 (1989).

8

Here, the Arbitration Provision specifically states that any disputes arising out of or in connection with the Contributor Agreements shall be resolved by arbitration under either the AAA or ICC arbitration rules.  Compl., Exs. 2, 3, § 11.8.  Both sets of rules grant the arbitrator power to rule on gateway arbitration questions, including arbitrability.  *See* AAA Commercial Arbitration Rule 7(a); ICC Rules of Arbitration, Art. 6(2).  Thus, to the extent Plaintiffs dispute that any of their claims against Getty Images are arbitrable, they must pursue that argument in arbitration, not before this court.  *See, e.g.*, *Yellow Cab*, 2011 WL 307617, at *5.

## 2. The Broad Scope of the Arbitration Provision Encompasses All of Plaintiffs' Claims Against Getty Images.

Even if the Court were to conclude that the parties had not delegated the gateway question of arbitrability to the arbitrator, it should still dismiss Plaintiffs' claims against Getty Images under Rule 12(b)(1) or Rule 12(b)(3) because the Arbitration Provision is a broad arbitration agreement that applies to all of Plaintiffs' claims against Getty Images.

The Arbitration Provision in Plaintiffs' Contributor Agreements is exceptionally broad, requiring arbitration of "any disputes arising out of or in connection with" the Contributor Agreements.  Compl., Exs. 2, 3 at ¶ 11.8; *see Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (examining arbitration provision referring to "[a]ny controversy or claims arising out of or relating to [the Agreement]", and noting that "[s]imilar types of arbitration provisions have been characterized as extremely broad and capable of an expansive reach").  The Arbitration Provision contains no exceptions or carve-outs from that straightforward mandate.  Indeed, in his order compelling Plaintiffs to arbitrate all of their claims against Getty Images in the NFL Action, Judge Sweet emphasized the breadth of the Arbitration Provision.  *See* NFL Action, Dkt. 102, at 27-28.

9

All of Plaintiffs' claims against Getty Images arise out of and are in connection with Getty Images' use, distribution and marketing of images that Plaintiffs delivered to it pursuant to the Contributor Agreements.  Plaintiffs' claims for breach of contract, declaratory judgment and breach of fiduciary duty rely directly on, and ask the Court to enforce or interpret, specific provisions of the Contributor Agreements.  And to assert their copyright infringement claims despite the broad license they granted Getty Images, Plaintiffs necessarily frame those claims as instances where Getty Images supposedly exceeded the scope of that license, thus making interpretation and analysis of the Contributor Agreements central to resolution of those claims. Plaintiffs cannot plausibly dispute that all of these claims fall squarely under the Arbitration Provision in the Contributor Agreements.  *See United Steel*, 531 F.3d at 536 (a party cannot avoid its contractual obligation to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute").

Plaintiffs' assertion of claims against Mr. George in the Complaint does not alter this analysis.  As discussed below, Plaintiffs' claims against Mr. George are also arbitrable. However, even if they were not, it would not impact Getty Images' right to arbitrate Plaintiffs' claims against it.  Under the FAA "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20.

### 3.    The Court Should Dismiss Plaintiffs' Claims Against Getty Images Under Governing Seventh Circuit Law.

For the reasons set forth above, Plaintiffs must arbitrate their claims against Getty Images rather than litigating them.  As Plaintiffs agreed to arbitrate their claims in Seattle, New York, London, Paris, or Frankfurt, none of which is located within this district, Compl., Exs. 2,

10

3 at ¶ 11.8, the Court should dismiss Plaintiffs' claims under either Rule 12(b)(1) or Rule 12(b)(3), rather than issuing an order compelling arbitration.[5]  *See Faulkenberg*, 637 F.3d. at 808 ("Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure to use when the arbitration clause requires arbitration outside the confines of the district court's district.") (citing *Cont'l Ins. Co. v. M/V Orsula*, 354 F.3d 603, 606-07 (7th Cir. 2003)); *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 & n.5 (7th Cir. 2005) (acknowledging that lower courts have found questions of arbitrability are "jurisdictional and therefore, a Rule 12(b)(1) dismissal is appropriate") (collecting cases); *FarmedHere, LLC v. Just Greens, LLC*, No. 14-CV-370, 2014 WL 2726707, at *7 (N.D. Ill. June 16, 2014) (dismissing under Rule 12(b)(3) where parties agreed to arbitrate in location outside judicial district).

### B.    The Court Should Dismiss Plaintiffs' Claims Against John George Under Rule 12(b)(1) or 12(b)(3) Because Those Claims Are Arbitrable.

In an apparent effort to circumvent their agreement to arbitrate claims arising out of or in connection with their Contributor Agreements, Plaintiffs have asserted duplicative copyright infringement claims against former Getty Images employee John George that focus on Mr. George's provision of Plaintiffs' images to LOTF under comp licenses in exchange for personal gifts, when he knew LOTF would use those images for unlicensed commercial uses. Compl., ¶¶ 75-79, 87-88.  Crucially, Plaintiffs have alleged that Mr. George took these actions in the scope of his employment with Getty Images and as its agent, which led Mr. George to

---

[5] Even if the Court were to find the Arbitration Provision unenforceable, dismissal of Plaintiffs' claims against Getty Images under Rule 12(b)(3) for improper venue would still be appropriate.  Rule 12(b)(3) permits dismissal where a forum selection clause designates a different forum and the clause is both enforceable and mandatory.  *See Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 761-62 (7th Cir. 2006) (affirming dismissal based on forum selection clause designating Dallas as location for disputes).  Contractual forum selection clauses are presumptively valid and enforceable.  *See Heller Fin., Inc. v. Midwhey Powder, Co.*, 883 F.2d 1286, 1290-91 (7th Cir. 1989).

DWT 29687668v7 0053349-000118

assert a third-party indemnity claim against Getty Images in the Scheels Action (which he will presumably again assert as a cross-claim in this case).  *See* Compl. ¶ 121; Scheels Action, Dkt. 255.  Thus, by asserting copyright infringement claims against Mr. George for which they aim to hold Getty Images ultimately liable (though Mr. George's indemnity cross-claim), Plaintiffs seek to strip Getty Images of its bargained–for benefit of the Arbitration Provision in the Contributor Agreements.

Recognizing the FAA's liberal federal policy favoring arbitration agreements, and the importance of preventing parties from avoiding or eviscerating arbitration agreements, courts have recognized numerous grounds on which to compel arbitration of claims involving non-signatories to an arbitration agreement.  *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (courts can require arbitration of claims involving non-parties to an arbitration clause under "traditional principles of state law [that] allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel"); *Zurich Am. Ins. Co.*, 417 F.3d at 687 (recognizing "five doctrines through which a non-signatory can be bound by arbitration agreements entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference").

Here, Plaintiffs' claims against Mr. George—and any resulting cross-claims or counterclaims involving Getty Images—are arbitrable on the grounds of ***agency*** (because Plaintiffs have alleged that Mr. George's infringing acts occurred within the scope of his employment with Getty Images, and thus as Getty Images' agent) and ***estoppel*** (because Plaintiffs' claims against Mr. George arise out of the same facts, and are thus intertwined with, certain of their claims against Getty Images).  Accordingly, the Court should dismiss Plaintiffs'

12

claims against Mr. George pursuant to Rule 12(b)(1) or Rule 12(b)(3).

> **1.** **Plaintiffs' Claims Against Mr. George Are Arbitrable Because They Arise Out of Actions Mr. George Allegedly Took as Getty Images' Agent.**

The Court should find that well-established agency principles require Plaintiffs to arbitrate their claims against Mr. George because those claims arise out of actions Mr. George allegedly took while acting in the course of his employment, and thus as an agent of Getty Images. The Seventh Circuit has expressly recognized that claims involving agents of parties to an arbitration agreement are arbitrable under principles of agency. *See In re Oil Spill by Amoco Cadiz*, 659 F.2d 789, 795–96 (1981) (requiring non-signatory plaintiff to arbitrate claim on agency grounds). Numerous courts have found claims against employees based on actions allegedly taken during the scope of their employment to be arbitrable if their employer's agreement with the plaintiff contains an arbitration agreement. *See, e.g.*, *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986) (brokers accused of churning securities account are covered by arbitration provision in the customer agreement) (collecting cases). And one court in this Circuit specifically applied the agency doctrine to require arbitration of claims against a company's officer where the plaintiff's claims relied on his employment and position with the company as a basis for seeking to hold the officer liable. *See Kahn v. Peak*, No. 91 C 7148, 1992 WL 142297, at *3 (N.D. Ill. June 18, 1992).

In assessing whether agency principles require arbitration of claims involving a non-signatory, courts "have looked to the allegations of the plaintiff's complaint—and have not asked whether the non-signatory defendant concedes it is, for example, a coconspirator or agent of a putative malefactor." *Holden v. Deloitte & Touche LLP*, 390 F. Supp. 2d 752, 768 (N.D. Ill. 2005) (internal citations omitted) (rejecting reconsideration of ruling requiring arbitration of

plaintiffs' claims on agency grounds).  Here, Plaintiffs' complaint is replete with allegations that Mr. George was acting as Getty Images' agent.  *E.g.* Compl. ¶¶ 6, 21, 75.  Plaintiffs' claims against Mr. George and their LOTF-related claims against Getty Images both rely on Plaintiff's allegation that Mr. George's alleged infringing acts took place within the scope of his employment.  *Id.* ¶¶ 75-79, 87-88, 121.  Indeed, Plaintiffs specifically allege that Mr. George "was able to grant [the allegedly infringing] 'comp' licenses and otherwise distribute copies of Plaintiffs' photographs to Getty Images' customers, including LOTF, ***only through and due to his position at Getty Images***."  *Id.* ¶ 84 (emphasis added).  And, of course, Getty Images only possessed those photographs in the first place by virtue of the Contributor Agreements that contain the Arbitration Provision.  *Id.*, Exs. 2 & 3.

Under these circumstances, the Court should find that Plaintiffs' claims against Mr. George, and any related cross-claims or counterclaims that he or Getty Images may assert against each other as a result, are arbitrable under agency principles.

### 2. Plaintiffs' Claims Against Mr. George are Arbitrable Because They are Intertwined with Their Claims Against Getty Images.

The Court should also (or alternatively) find that principles of equitable estoppel and "intertwined claims" require Plaintiffs to arbitrate their claims against Mr. George and estop Mr. George from refusing to arbitrate.[6]  In brief, this "intertwine/estoppel" doctrine recognizes that "application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted

---

[6] *See, e.g.*, *Leff v. Deutsche Bank AG*, No. 08-CV-733, 2009 WL 1380819, at *4 (N.D. Ill. May 14, 2009) ("A non-signatory is estopped from denying its obligation to arbitrate when it receives a direct benefit from a contract containing an arbitration clause."); *Henry Techs. Holdings, LLC v. Giordano*, No. 14-CV-63-JDP, 2014 WL 3845870, at *4 (W.D. Wis. Aug. 5, 2014) (same).  Plaintiffs have alleged that Mr. George's supposedly infringing actions with respect to images obtained from Plaintiffs under the Contributor Agreements "benefitted himself," in the form of "personal gifts and benefits."  Compl. ¶¶ 82, 88.  These personal gifts and benefits Mr. George received from LOTF relate directly to the Contributor Agreements, which provided Mr. George with access to Plaintiffs' images he provided to LOTF.  *Id.* ¶ 84.

14

misconduct by both the nonsignatory and one or more of the signatories to the contract." *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (internal alterations and quotation marks omitted); *accord PRM Energy Sys., Inc. v. Primenergy, LLC*, 592 F.3d 830, 836 (8th Cir. 2010); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836 (7th Cir. 1981) (recognizing that claims involving a non-signatory to an agreement are arbitrable if they are grounded in or intertwined with claims under the agreement that subjects the signatory to arbitration).   Courts have applied the "intertwine/estoppel" doctrine in various situations, at least two of which are directly relevant to Plaintiffs' claims against Mr. George.

*First*, courts have repeatedly applied the "intertwine/estoppel" doctrine to compel arbitration where a signatory sues a non-signatory on claims that rely on the terms of a contract containing an arbitration agreement, even if the signatory tries to frame those claims as something other than a breach of contract.  *See, e.g.*, *Hughes*, 659 F.2d at 838 (estopping tort claims brought against contractual counterparty's appointed project manager and requiring arbitration of those claims); *Barton Enters., Inc. v. Cardinal Health, Inc.*, No. 10-CV-324, 2010 WL 2132744, *4 (E.D. Mo. May 27, 2010).  In this context, the "intertwine/estoppel" doctrine recognizes that it would be unfair to allow a plaintiff to "rely on a contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." *Levin v. NC12, Inc.*, No. 10-CV-01606, 2011 WL 2582138, at *5 (N.D. Ill. June 29, 2011); *see also Barton*, 2010 WL 2132744 at *4 (same).  Here, in light of the broad license that Plaintiffs granted to Getty Images, their copyright infringement claims necessarily measure the alleged infringing acts against the rights Plaintiffs granted in the Contributor Agreements.  For example, while Plaintiffs allege that Mr. George's infringing acts include "failing to take reasonable steps to monitor the use of Plaintiffs' photos that it [sic] provided to customers under "comp" licenses,

including but not limited to LOTF," Compl. ¶ 73, Plaintiffs identify that exact same lack of monitoring as a breach of the Contributor Agreements by Getty Images.  *Id.* ¶ 145.

**Second**, courts also regularly apply the "intertwine/estoppel" doctrine to compel arbitration of claims against non-signatories that are factually intertwined with similar claims against the signatory to the arbitration agreement.  *See, e.g.*, *PRM Energy*, 592 F.3d at 836 ("PRM specifically allege[d] coordinated behavior between a signatory and a nonsignatory."); *F. Hoffmann-La Roche Ltd. v. Qiagen Gaithersburg, Inc.*, 730 F. Supp. 2d 318, 322 (S.D.N.Y. 2010) (inclusion of non-signatory in arbitration was appropriate because signatory's claims were "intimately founded in and intertwined with the underlying contract issues arising under the" agreement containing an arbitration clause); *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 713 F. Supp. 2d 734, 745 (N.D. Ill. 2010) ("Because plaintiffs argue that their claims against non-signatory defendants are indistinguishable from their claims against signatory defendants, they are estopped from arguing the claims are separate for purposes of avoiding arbitration.").  Here, Plaintiffs have brought **identical** copyright infringement claims against both Mr. George and Getty Images stemming from the provision of their images under comp licenses to LOTF.  Compl. ¶¶ 112-121.

Ultimately, application of equitable estoppel focuses on concepts of equity and fairness. *See Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000) ("The linchpin for equitable estoppel is equity—fairness.").  It would be patently unfair to effectively deprive Getty Images of the benefit of its right to arbitrate disputes arising from or in connection with the Contributor Agreements simply because Plaintiffs decided to bring identical claims against Mr. George.  Yet, that is exactly what Plaintiffs appear to be seeking to do in asserting their claims against Mr. George.  The Court should require the parties to

DWT 29687668v7 0053349-000118

arbitrate their entire dispute, including the claims involving Mr. George.[7]

**C.      In the Alternative, the Court Should Stay This Lawsuit or Any Claims It Declines to Dismiss in Favor of Arbitration.**

In the alternative, should the Court decline to dismiss any or all of Plaintiffs' claims against Getty Images and Mr. George outright (or any cross-claim Mr. George may assert against Getty Images), it should order this entire case, or any claims it declines to dismiss, be stayed pending resolution of the arbitration Getty Images has commenced against Plaintiffs. *See* 9 U.S.C. § 3.

When a party subject to a written arbitration agreement commences a court action in lieu of arbitration, Section 3 of the FAA provides that the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." *Id.* Section 3 "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall" stay the action as to those issues until they are arbitrated pursuant to the arbitration agreement. *Dean Witter*, 470 U.S. at 218.

Even if the Court were to decide that Plaintiffs' claims against Mr. George are not arbitrable, it should still stay this case under Section 3 of the FAA. *See ChampionsWorld, LLC v. U.S. Soccer Fed'n, Inc.*, 487 F. Supp. 2d 980, 991-92 (N.D. Ill. 2007) ("Where claims against a signatory to an arbitration agreement are 'obviously intertwined' with those against

---

[7] Assuming Mr. George reasserts his cross claim for indemnity against Getty Images, that claim too must be arbitrated under the intertwine theory.  Mr. George's claim for indemnity hinges on his allegation that he was acting within the scope of his employment as Plaintiffs allege (and as Getty Images contests).  *See* Scheels Action, Dkt. 255 at ¶¶ 24-25.  This indemnification claim is completely intertwined with (and inextricable from) Getty Images' defense that Mr. George's conduct occurred ***outside*** the scope of his employment.  Resolution of the indemnification claim will turn on many of the same issues as Plaintiffs' claims directly against Getty Images and Mr. George.  Accordingly, any indemnification claim Mr. George may bring against Getty Images in connection with this case or Plaintiffs' claims should be arbitrated as well.

nonsignatory parties, courts should stay the entire case under FAA § 3.") (quoting *Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp. 2d 995, 1005 (N.D. Ill. 2001)).[8]  The Supreme Court has recognized that in accordance with the FAA's liberal policy in favor of arbitration, "it may be advisable to stay litigation among the nonarbitrating parties pending the outcome of arbitration."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20 n.23.  A stay is appropriate where it can minimize the "potential for impairment of the issues before the arbitrator." *Morrie Mages & Shirlee Mages Found. v. Thrifty Corp.*, 916 F.2d 402, 407 (7th Cir. 1990).  In making this decision, "district courts actually may prefer to stay the balance of the case in the hope that the arbitration might help resolve, or at least shed some light on, the issues remaining in federal court."  *Volkswagen of Am. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007).[9]

Here, unless it dismisses all of Plaintiffs' claims in favor of arbitration (as Getty Images believes it should), the Court should stay all non-dismissed claims under 9 U.S.C. § 3.  If Plaintiffs are permitted to litigate their claims against Mr. George, while arbitrating their claims against Getty Images, those parallel proceedings would not only risk inconsistent rulings on identical issues (e.g., whether Mr. George's actions occurred within the scope of his employment with Getty Images), but could thwart Getty Images' right to arbitrate those issues, if a ruling on those issues were first issued in litigation.  Such parallel proceedings could also raise challenging issues of claim preclusion and issue preclusion.  Accordingly, unless the Court dismisses all claims in this lawsuit in favor of arbitration, it should stay this case pending completion of Getty Images' arbitration with Plaintiffs.

---

[8] The Court also has the power to stay the case pursuant to its inherent power to control its docket.  *See Pryner v. Tractor Supply Co.*, 109 F.3d 354, 361 (7th Cir. 1997).

[9] The fact that a stay could lead to piecemeal litigation does not change this result: "The preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation, at least absent a countervailing policy manifested in another federal statute."  *Dean Witter*, 470 U.S. at 221.

18

## IV.    CONCLUSION

For the foregoing reasons, all of the claims in this case are subject to mandatory arbitration at a location outside this district.  Therefore, the Court should dismiss the claims for improper venue pursuant to Rule 12(b)(1) or Rule 12(b)(3).  If the Court declines to dismiss any of the claims against Getty Images or Mr. George, it should order this entire case, or any claims it declines to dismiss, stayed pending completion of the arbitration Getty Images has commenced against Plaintiffs.

Dated: June 3, 2016

DAVIS WRIGHT TREMAINE LLP


*/s/ Jonathan M. Lloyd*
Jonathan M. Lloyd
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Tel: 206-622-3150
Fax: 206-757-7700
jonathanlloyd@dwt.com

*Attorneys for Getty Images (US), Inc.*