IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SCOTT BOEHM and DAVID STLUKA,

                        Plaintiffs,

v.

GETTY IMAGES (US), INC. and JOHN GEORGE,

                        Defendants.

OPINION & ORDER

16-cv-311-jdp

---

Plaintiffs Scott Boehm and David Stluka accuse defendants Getty Images (US), Inc. and John George of inappropriately delivering copies of plaintiffs' photographs to customers, resulting in infringement of plaintiffs' copyrights. The question now before the court is whether these claims must be arbitrated.

Plaintiffs both entered into contracts containing a broad arbitration clause with Getty. Based on those contracts, defendants moved to dismiss plaintiffs' first amended complaint, or in the alternative, to stay the case pending arbitration. Dkt. 31 and Dkt. 34.[1] The arbitration clauses at issue incorporate rules that provide that the arbitrator has the power to determine the arbitrability of claims. Because the arbitration clause clearly and unmistakably provides that threshold arbitrability questions are for the arbitrator, the court will grant both defendants' motions and dismiss the lawsuit. The court will dismiss as moot Getty's motion to stay discovery pending resolution of these motions. Dkt. 44.

---

[1] George argues that plaintiffs' first amended complaint was untimely filed. But plaintiffs moved to extend the deadline to respond to Getty's motion to dismiss or to amend their complaint. Dkt. 19. The court granted the motion, giving plaintiffs leave to respond to Getty's and George's motions to dismiss by July 15. Dkt. 23. Plaintiffs timely filed their first amended complaint on July 15. Dkt. 24. The court will dismiss as moot defendants' motions to dismiss plaintiffs' initial complaint. Dkt. 16 and Dkt. 22.

BACKGROUND

As explained below, the court will treat defendants' motions as motions to dismiss under Federal Rule of Civil Procedure 12(b)(3). When deciding such a motion, the court should draw reasonable inferences from the facts in the plaintiffs' favor, *Faulkenberg v. CB Tax Franchise Sys, LP*, 637 F.3d 801, 806 (7th Cir. 2011), and need not limit its consideration to the pleadings. *Continental Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).

Plaintiffs, freelance photographers, licensed their work to Getty. Plaintiffs' relationships with Getty were governed by contracts. An identical arbitration clause in these contracts provides that "[a]ny dispute arising out of or in connection with the Brand Agreement shall be finally settled under the Commercial Rules of the American Arbitration Association ('AAA') or International Chamber of Commerce ('ICC') in Seattle, Washington, U.S.A., New York, New York, U.S.A., London, England, Paris, France or Frankfurt, Germany." Dkt. 25, at 27 and Dkt. 26, at 27. Plaintiffs' contracts expressly provide that the arbitration clause "will survive any expiration or termination" of the contract, Dkt. 25, at 26 and Dkt. 26, at 26, and that the contracts are to be governed by New York law.

The substantive terms of the contract authorized Getty to sell licenses to plaintiffs' works. In exchange, Getty paid a percentage of the licensing fees to each plaintiff. Boehm and Getty amended Boehm's contract in 2005, assigning all future rights and obligations under the contract to Boehm Creative, Inc., the corporate entity through which Boehm licenses his works. Getty terminated Stluka's contract in 2009 and told Stluka that it was removing all of his images from Getty's licensing systems. Likewise, Getty terminated Boehm Creative's contract in 2012 and told Boehm that it was removing all of his images from Getty's licensing systems.

Plaintiffs allege that Getty and its former employee, George, provided copies of plaintiffs' photographs (photographs that plaintiffs had supplied to Getty for licensing under the terms of their contracts) to persons and businesses without a license or under forms of licenses not identified in plaintiffs' contracts with Getty. These persons and businesses created infringing, counterfeit products using plaintiffs' photographs. Thus, Getty and George contributed to a massive counterfeiting scheme infringing plaintiffs' copyrights. Getty continued to provide copies of plaintiffs' photographs to the infringing customers after terminating Stluka's contract with Getty.

George, specifically, while "acting on behalf of Getty Images and within the scope of his employment duties," provided copies of plaintiffs' photographs to a Getty customer through "comp" licenses (licenses granted for free to potential customers who may use the photographs only for internal mock-up or layout purposes) and other means of access despite knowing that the customer intended to use these photographs in copyright infringing products. *Id.* ¶ 128. George also provided copies of plaintiffs' photographs to other customers under "Editorial-Newspaper" licenses, even though Getty should have known that these customers intended to use these photos for commercial sports memorabilia, not newspapers, in violation of the license. George and other Getty employees provided comp licenses and unlicensed photographs to customers to establish and build Getty's customer relationships and in exchange for personal gifts and other benefits from the customers. Getty encouraged this behavior.

Plaintiffs filed suit against Getty and George, alleging direct, contributory, and vicarious infringement of plaintiffs' copyrights and requesting a declaratory judgment that plaintiffs' contracts with Getty are invalid and unenforceable and that plaintiffs own

3

exclusive copyrights in the photographs at issue. Getty and George moved to stay or dismiss the case in favor of arbitration pursuant to the arbitration clause contained in plaintiffs' contracts.

ANALYSIS

A. Plaintiffs' claims against Getty

Plaintiffs signed contracts with Getty that contained a broad arbitration clause. Getty and George contend that the arbitration clause in plaintiffs' contracts not only requires arbitration of plaintiffs' claims against Getty, but also requires that any threshold questions of arbitrability, such as the scope of the arbitration clause, go to the arbitrator as well. Threshold questions of arbitrability are typically questions for the court, "[u]nless the parties clearly and unmistakably provide otherwise." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). In this case, the arbitration clause clearly and unmistakably submits threshold arbitrability questions to the arbitrator, so plaintiffs cannot pursue their claims against Getty in court.

The arbitration clause in plaintiffs' contracts refers to the International Chamber of Commerce Rules of Arbitration and the Commercial Rules of the American Arbitration Association. The AAA Rules state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."[2] The ICC

---

[2] Commercial Arbitration Rule R-7(a) (Am. Arbitration Ass'n 2016), https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004103&revision=latestreleased.

Rules contain a similar provision.[3] Although the Seventh Circuit has yet to address the question, the consensus view is that reference to the AAA's Rules in an arbitration clause reserves threshold questions of arbitrability to the arbitrator.[4] Given the great weight of authority in its favor, the court will follow this rule.

Boehm argues that he is not bound by the arbitration clause because Boehm Creative, Inc. is the signatory to the contract under the 2005 amendment, not Boehm himself. Whether a non-signatory to an arbitration agreement is obligated to arbitrate is a question for the court, even when the arbitration agreement clearly and unmistakably reserves threshold questions of arbitrability to the arbitrator, because if the non-signatory is not bound by the arbitration agreement, he "clearly could not have agreed to arbitrate arbitrability." *Gilman*, 61 F. Supp. 3d at 801; *see also Contec Corp.*, 398 F.3d at 209.

But Boehm *is* a signatory to the arbitration agreement. Boehm signed a contract with Getty that contained the arbitration clause at issue here and stated that the arbitration clause would "survive any expiration or termination" of the agreement. Dkt. 25, at 26. Although

---

[3] *See* ICC Rules of Arbitration Art. 6 (Int'l Chamber of Commerce 2012), http://www.iccwbo.org/products-and-services/arbitration-and-adr/arbitration/icc-rules-of-arbitration/.

[4] *See, e.g.*, *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Fadal Machining Ctrs., LLC v. Compumachine, Inc.*, 461 F. App'x 630, 631, 632 (9th Cir. 2011); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 211 (2d Cir. 2005); *Allscripts Healthcare, LLC v. Etransmedia Tech., Inc.*, No. 15-cv-5754, 2016 WL 3027902, at *4 (N.D. Ill. May 27, 2016) (adopting the "consensus view"); *Gilman v. Walters*, 61 F. Supp. 3d 794, 800-01 (S.D. Ind. 2014); *see also Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 472-73 (1st Cir. 1989) (holding that an agreement incorporating the ICC Rules delegated arbitrability questions to the arbitrator). *But see Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 780 (10th Cir. 1998) (holding an arbitration clause incorporating the AAA's Rules did not delegate arbitrability questions to the arbitrator, but without discussing Rule 7(a) of the AAA's Rules).

Boehm later assigned his rights and obligations under the contract to Boehm Creative, Inc., the arbitration clause survived the assignment. And even if Boehm had not signed the arbitration agreement personally, he would likely be bound by it under the doctrine of estoppel. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *Zurich Am. Ins. Co. v. Watts Indus. Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Boehm's copyrighted works at issue in this case were licensed and distributed through Getty under the Boehm Creative contract; Boehm benefited from the contract by receiving licensing fees. And although Boehm is not seeking to enforce the contract, his claims are grounded in it. He is estopped from disclaiming the contract for purposes of arbitration.

Plaintiffs also argue that the high costs of arbitration would prevent them from vindicating their rights in arbitration. The prohibitive nature of arbitration costs is a legitimate reason to deny arbitration, at least in situations involving the assertion of federal statutory rights. *See James v. McDonald's Corp.*, 417 F.3d 672, 679 (7th Cir. 2005). But "the party seeking to invalidate an arbitration agreement . . . must provide some individualized evidence that it likely will face prohibitive costs in the arbitration at issue and that it is financially incapable of meeting those costs." *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003).

In support of their argument, plaintiffs put forth a recent survey indicating that the cost of arbitrating a hypothetical $80,000 consumer claim with the AAA may be up to 3,009 percent higher than litigating the dispute in the Circuit Court of Cook County, Illinois. *See The Costs of Arbitration,* Public Citizen, http://www.citizen.org/publications/publicationredirect.cfm?ID=7173#o. This is not individualized evidence. Plaintiffs also claim that pursuing their claims in the AAA would require initial fees "as high as $87,500,"

6

which the AAA could waive, plus administrative costs, arbitrators' hourly fees, and other expenses. Dkt. 35, at 27. This is somewhat individualized, at least, but the court cannot determine from this information alone what the total costs would be, whether these costs will likely be prohibitive, and whether plaintiffs are financially incapable of paying these costs. Plaintiffs reference Stluka's modest 2014 net income, Dkt. 37, and discuss the reduction in their royalty earnings resulting from their lawsuit against AP, but they do not provide an estimate of the costs they will face if they continue to litigate their claims in court. Plaintiffs have not made the necessary showing that the expenses that they "necessarily and definitely would incur would make arbitration prohibitive." *James*, 417 F.3d at 679.

Plaintiffs' remaining arguments are questions for the arbitrator, not the court. "[I]ssues of waiver, delay, defenses to arbitrability, time limits, notice, laches, estoppel and conditions precedent for arbitration are all matters for an arbitrator to decide, not the court." *Emps. Ins. of Wausau v. Continental Cas. Co.*, No. 15-cv-226, 2016 WL 632642, at *2 (W.D. Wis. Feb. 17, 2016) (citing *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)); *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."). In sum, plaintiffs must present their claims against Getty to an arbitrator. And the arbitrator, not this court, will decide if the claims against Getty must be arbitrated.

## B. Plaintiffs' claims against George

Although the arbitrator will decide the scope of the arbitration clause, it appears likely that plaintiffs' claims against George will also be arbitrable, given that plaintiffs allege George

was acting within the scope of his employment duties. Even if plaintiffs' claims against George are not fully arbitrated, they will certainly be affected by the arbitration proceedings. To conserve judicial resources, the court will not allow plaintiffs' claims against George to go forward while their claims against Getty are diverted to arbitration. George may well be bound to the arbitration clause as a non-signatory, but this court need not reach that question now. Again, whether the claims against George must be arbitrated is a question for the arbitrator.

## C. To dismiss or stay the action

The court concludes that plaintiffs' claims must be presented in arbitration rather than this judicial forum. However, the court cannot compel arbitration in this case because the arbitration clause calls for arbitration outside the Western District of Wisconsin. *Faulkenberg*, 637 F.3d at 808 ("[U]nder § 4 of the FAA, a district court cannot compel arbitration outside the confines of its district.").[5] In these circumstances, the court must dismiss the case under Federal Rule of Civil Procedure 12(b)(3) for improper venue. *Id.*[6]

---

[5] In their opposition brief, plaintiffs request that the court, should it compel arbitration, direct defendants to comply with the manner of arbitration required under their contracts and require Getty to pay the costs associated with arbitration. Because the court cannot compel arbitration, it also cannot direct the manner of arbitration, so it must deny plaintiffs' requests.

[6] When, as here, the threshold questions of arbitrability are sent to the arbitrator, courts have commonly dismissed the suit. *See, e.g.*, *Fadal Machining Ctrs., LLC*, 461 F. App'x at 631, 633 (affirming dismissal under Rule 12(b)(6)); *Yellow Cab Affiliation, Inc. v. N.H. Ins. Co.*, No. 10-cv-6896, 2011 WL 307617, at *8 (N.D. Ill. Jan. 28, 2011) (dismissing the action). *But see Fallo*, 559 F.3d at 880 (staying the proceedings); *Terminix Int'l Co.*, 432 F.3d at 1332 (staying the proceedings); *Allscripts Healthcare, LLC*, 2016 WL 3027902, at *6 (staying the proceedings).

The court will dismiss this suit without prejudice. If the arbitrators decide that some or all of plaintiffs' claims are not arbitrable, or should arbitration not resolve all of the issues, any party may move the court to reopen the case.

ORDER

IT IS ORDERED that:

1. Defendant Getty Images (US), Inc.'s motion to dismiss plaintiffs' first amended complaint or in the alternative to stay pending arbitration, Dkt. 31, and defendant John George's renewed motion to dismiss or to stay pending arbitration, Dkt. 34, are GRANTED.

2. The case is DISMISSED without prejudice. If arbitration does not resolve all of the issues, then any party may move the court to reopen the case.

3. Defendant Getty Images' motion to dismiss or in the alternative to stay pending arbitration, Dkt. 16, defendant George's motion to dismiss or in the alternative to stay pending arbitration, Dkt. 22, and defendant Getty Images' motion to stay discovery, Dkt. 44, are DENIED as moot.

Entered October 19, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge